## THE PEOPLE VS. GEORGE VANDERPOOL.

In a prosecution for murder, it devolvs upon the People to establish not only the fact of the killing, but that such killing was malicious.

Malice may be said to be the spirit desiring harm or misfortune to another, without just cause.

The definition of murder, under our statute, remains the same as at common law.

The *corpus delicti* must be established by clear and uneqivocal proof, and this must be done by direct evidence when it can be made; or, when direct evidence cannot be made, then by circumstances of equal power.

If circumstantial evidence satisfies the mind, then it is equal to positive evidence, because it produces the same effect.

To warrant a verdict of guilty, the jury must find that the theory of the guilt of the prisoner flows naturally from the facts proved, and from all of the facts, and must be *consistent with all such facts,* and utterly inconsistent with any other theory.

To render any fact or circumstance alleged by the prosecution, or attempted to be proven, f any value in establishing the guilt of the defendant, such fact or circumstance must, not only be proven beyond all reasonable doubt, but it must be such a fact as is consistent with the guilt of the defendant and inconsistent with his innocence.

If the light drawn from any given fact, taken in connection with all the facts upon which it has a bearing, contributes no more to sustain the theory of guilt than of innocence ·such fact should be rejected.

So uncertain and unsatisfactory are our conclusions drawn from moral phenomena, that in matters of great importance, especially such as involve the life or liberty of the citizen, we should only give effect to such conclusions as are corroborative of other facts and circumstances.

The rule to be applied in weighing testimony, discussed. Also, the weight to be given to the statement of the accused.

The reasonable operation of evidence of the previous good character of the accused, is to create a presumption that the party was not likely to have committed the act imputed to him; and inasmuch as it is the duty of the jury to find beyond a reasonable doubt, the guilt of the respondent before they should convict, it is immaterial whether such doubt is induced by want of testimony, or by the introduction of any evidence, whether of good character or any other fact or facts which the Court permits to go to the jury.

*Reasonable certainty* of the respondent's guilt, is what the law requires to justify a convic -

tion—that degree of certainty upon which the jury would return to act in their own grave and important concerns.

*Ka'amazoo Circuit, November*, 1870.

The theory of this case is sufficiently stated in the charge of the Court.

*Attorney General Dwight May, B. M. Cutcheon, and G. V. N. Lothrop* for the People.

*D. Darwin Hughes and John Van Arman* for the Respondent.

*By the Court*, BROWN, J.—

GENTLEMEN of the Jury:—The People, by the public prosecutor, have informed against the respondent at the bar, charging him with having wilfully and with malice aforethought, on the fifth day of September, A. D. 1869, at the City of Manistee in county of Manistee, in this State, killed and murdered Herbert Field.

The theory of the prosecution is, that Field was murdered in the Bank of Manistee, by the respondent; and to support this theory they rely upon the establishment of certain facts which, they insist, have the effect to carry conviction to the mind, of the correctness of this theory.

The People do not claim that any positive or direct evidence has been given upon the main fact of killing, or as to who the guilty perpetrator is. These alleged facts they have sought to establish by what we call circumstantial evidence.

The Prosecution insist, among other things, that the effect of the dissolution of the partnership, and the withdrawal of Field's capital, was to leave the respondent in a crippled. if not insolvent condition : that shortly after the return of the defendant and Field from the shoe shop, where they went to procure witnesses to their agreement, into the bank, the respondent struck Field with some hammer-like weapon, inflicting the wounds claimed to have been found on Field's head, and causing his almost instant death—that the shuffling sounds testified to by the witness Ramsdell, were the sounds of the assault and dying struggles of Field—that the respondent was obliged to take off his pantaloons and vest, to hide the evidences of his

crime—that he hastened home as soon as possible, carefully taking the little dog with him to prevent his cries from giving alarm : that for the purpose of diverting suspicion, he carefully kept in the presence of his guests during] the afternoon and early part of the evening: that during the night he took the bleeding body from the bank to the river, having tied a weight to it, and so cast it into the river: that almost as soon as daylight he went to the bank to obliterate the evidences of his crime, and that his scrubbing, burning papers, clothes and carpet were all for that purpose : that his assertion that Field had taken some of his property and run away, were wilfully false and designed to divert suspicion from himself, as were also the alleged acts of hiding the gold, of concocting the " Jim Nolan and Bill Brown letter," and the alleged fraudulent alteration of the entries against Field, in the bank journal. This I believe to be a correct statement of the theory of the Prosecution. The respondent's plea of " not guilty " puts in issue all the facts relied upon by the People in order to make out their case. And it now becomes your duty to say whether the facts in this case justify the allegations and conclusions of the prosecution.

In the administration of justice—in the determination of matters in cortroversy, the value of trial by jury is, for many reasons, considered invaluable, and especially is this the case where persons are charged with having violated the law.

It devolves upon you, under the solemnity of your oaths, to say whether the respondent, George Vanderpool, is guilty of the crime with which he is charged ; and it becomes my duty to instruct you as to the rules and principles of law necessary to aid you in arriving at a correct conclusion, from the facts presented to you by the evidence. It is not the province of the Court to comment upon the facts, but only to furnish you, as I have indicated, the guides to aid you in arriving at a correct conclusion. Whatever may be my views as to the guilt or innocence of the accused, you are to act upon your own convictions. Indeed, it would be improper for me to indicate to you my impressions as to the facts. The Court must be responsible for the accuracy of the rules of evidence and principles of

law to be submitted to you, and you are to be responsible for their correct application.

It has been held in apparently well considered cases that when the People establish the fact of the killing, by the respondent, the law presumes that such killing was malicious. It is now recognized as the law in Michigan, at least,"that there is no such thing as the separation of the ingredients of the offence, so as to leave a part to be established by the prosecution, while as to the rest the defendant takes upon himself the burden of proving a negative. The idea that the burden of proof shifts in these cases is unphilisophical, and at war with fundamental principles of criminal law, *People vs. Garbut*, 17 *Mich.* 22. I do not mean to be understood that it is incumbent upon the People to give direct proof, at the outset, of the malicious or criminal intent. To intend, is to fix the mind upon; to have a design; to purpose; and as neither the purposes or volitions of the mind of one individual can be determined by another, except by the conduct and expressions of such individual, it follows that such conduct and expressions must constitute the means of inducing in the mind of one person the intent or purpose of another.

A man may kill another *purposely* and not do it *maliciously*. He may do it in defence of his person or his possessions; and in such case it is not murder, for there is no malice; no intent to do an unlawful act. Malice may be said to be a spirit desiring harm or misfortune to another without just cause. It is defined to be " a depraved inclination to mischief; intention to do an act which is wrongful, without just cause or excuse; a wanton disregard of the rights or safety of others;" and " malice aforethought" is "malice previously and deliberately entertained."

The main facts in this case are, 1st, The killing of Herbert Field, and 2d, Whether the respondent is guilty of such killing, in the manner and form set forth in the information.

The humane policy of the law is, that every man is presumed to be innocent until proven guilty. Indeed, the well-being of society, and the happiness of the people require that there should be that mutuality and confidence in the integrity,

honesty and purity of each individual member, which assumes that every man is upright before the law. You will keep this in view, when you retire to your room, divesting yourselves of every prejudice.

The third request of counsel for respondent correctly states this proposition as follows:

"The legal presumption is that the prisoner is innocent of the crime charged, and the burden is upon the prosecution of proving every requisite to establish his guilt, and nothing can be taken by implication against him."

It was your duty, in entering the jury box, to look upon George Vanderpool as an innocent man, and as still innocent unless the People have made the contrary clearly to appear. You will now proceed to enquire whether the People have proven that he is guilty in the manner and form as they have charged.

To constitute the crime of murder, there must not only be a killing, but the person charged with the offence must be shown to have committed the act wilfully and maliciously. Sir Edward Coke defines murder, at common law, as being " Where a person of sound memory and discrimination unlawfully killeth any reasonable creature in being, and under the King's peace, with malice aforethought, express or implied." In other words, Gentlemen, the act must have been the offspring or rather the dictate of a wicked, depraved and maglignant heart.

By using the word malicious, in this connection, I do not mean that it is necessary that he should have entertained any spite or malevolence towards the deceased; but he must have had an evil design.

The definition of murder, under our statute, remains the same as at comon law; and all that our statute does is to divide it into classes; and I charge you, Gentlemen, that in order to find a person guilty of murder in the first degree, you must find that he killed the deceased either by poison, or lying in wait, or, that it was some other kind of wilful, deliberate, and premeditated killing; or that the killing was done while the accused was engaged in the prepetration or attempt to perpetrate

one or more of the four offences mentioned in the statute: to-wit, arson, rape, robbery, or burglary.

Any slaying without deliberation, or where the intent was to commit another and lesser injury, is either murder in the second degree or one of the lighter grades of homicide.

Homicide has been defined as "the destruction of the life of one human being, either by himself or by the act, procurement, or culpable omission of another." Murder is the killing with criminal intent.

The first thing you are to determine, is, whether Herbert Field was killed as alleged in the information. If you shall be satisfied upon this point, that such was the case, you will then inquire who inflicted the wounds causing his death.

"The fact that Herbert Field is dead and that he came to his death by the criminal act of another, or in other words the *corpus delicti* must be established by clear and unequivocal proof, and this must be done by direct evidence when it can be made; or when direct evidence cannot be made, then by circumstances of equal power."

As I have already intimated, the evidence upon which it is sought to establish and support the allegations in the information is circumstantial, and what I desire to be understood in saying that these circumstances must have equal power with positive testimony, in order to warrant a conviction, is, that they must be sufficient to satisfy the mind beyond a reasonable doubt. This amount of power is required in the case of positive evidence; and the same amount of power, to wit, sufficient to satisfy the mind beyond a reasonable doubt is required in the case of circumstantial evidence. I have been requested to instruct you that "the leading characteristic of circumstantial evidence is that it is a substitute for positive evidence, and when as in this case, it is solely relied upon, it should be so strong as to produce upon the mind of the jury a conviction, equal to that of positive evidence, or the prisoner must be acquitted."

This is true, Gentlemen, but what is meant by being *equal*, must have reference to its effect. If circumstantial evidence satisfies the mind, then it is equal to positive evidence, because it produces the same effect. The object of all evidence is the

discovery of truth, and whether this is accomplished by circumstantial or positive evidence, the result being the same, the means producing it must be the same in power. [If the one accomplishes the same thing as the other, then they are equal

As the main facts alleged in this case, on the part of the Prosecution, depend for their establishment upon the existence of collateral facts and circumstances, it is highly important that you should understand clearly what is meant by circumstantial evidence.

We often speak of men and things as occupying an entirely independent position; and yet, our observation and experience teach us that every fact is dependant upon some other fact. It is true that the relations of persons to each other or of one thing to another, may be so very remote as to justify the conclusion that there is no direct dependence of the one upon the other. Where, from our experience and observation, we are satisfied that one fact may exist as well without the existence of a certain other fact as with it, we then speak of those two facts as independent of each other. But when, in relation to certain established facts, human observation and experence teach us that certain other things may be deduced and presumed from them as a natural and very probable conclusion, so as to gain the assent of an inteligent and conscientious person, we are justified in permitting the mind to settle and rest upon the conviction which the established fact produces.

When we rely upon one fact to establish another, the fact relied upon is styled an evidentiary fact,—a fact furnishing evidence of the existence of some other fact. In our researches after truth, it often happens that we are compelled to group together various facts which, when so grouped, constitute a body of evidence carrying conviction to the mind of the establishment of truth.

In this connection it is proper that I should direct your attention to what we call presumptions. A legal presumption is " the taking of a fact or proposition to be true before it is positively shown or certainly known to be so; an inference as to the existence of one fact not certainly known, from the existence of some fact known or proved, founded on a previous

experience of their connection." In such cases the presumption is assented to as a fact—is taken for granted until the contary is made to appear.

Sometimes circumstances are such as to show that they necesarily attend the fact presented. At other times these circumstances are more remote, and the truth of the theory sought to be established is not so easily arrived at; and careful, intelligent and patient investigation, coupled with the exercise of our reasoning powers and aided by our experience and observation are required. These circumstances when resorted to as evidence are called *certain* or *uncertain*-certain where the conclusion in question necessarily follows : as, where a man had received a mortal wound, and it was found that the impression of a bloody *left* hand had been made on the *left* arm of the deceased, it was certain some other person than the deceased must have made such mark. 14 *How. St. Tr.* 1324. But it is uncertain whether the death was caused by suicide or by murder, and whether the mark of the bloody hand was made by the assassin, or by a friendly hand that came too late to the relief of the deceased.

As to those matters which we frequently associate in our minds, the mere suggestion of one presents the other to the mind almost instantly. We see a human footprint, and as an explosion follows the igniting of gun powder or as thunder follows the lightning, so, following the view of the footprint is the conviction upon the mind that it was made by some human being. In the case I have just put, the footprints would indicate that some human being had been there, but they would not, standing alone, point to any particular individual. Some other fact or circumstance would be required to direct the mind to the person whose feet made those inpressions; and those other facts might, perhaps, require the laborious process and exercise of the reasoning faculties and powers. Our intellectual processes are sometimes rapid, so rapid that we are unable to trace the connection between the act of the judgment and the train of reasoning of which it is the result. *Wills on Cir. Ev.*, 31.

Sometimes when the process is less rapid, we may fancy that we have weighed carefully every fact composing the links in the chain which couples and connects the theory with the

main fact, and makes that appear real which at first appeared but theoretical. But in weighing these collateral facts we must not forget the frailty of humanity; we must not forget that we are creatures of passion and prejudice. The cause of Truth and Justice demands, especially in the investigation of questions of great magnitude, that we should examine ourselves carefully and see to it that we are uninfluenced by any considerations which would tend in the slightest degree to interfere with our intellectual processes. We must repel every suggestion which may be presented to the mind as to what others may think or say of our conclusions, or as to the consequences of our conclusions. The only desire by which we should be actuated is the desire to do right. Truth is right, always right, and the moment we attempt to compromise it, we do it violence and disgrace our manhood. Sometimes truth falls into the pit of obscurity and is covered up by the subtle web of falsehood. It is the duty of jurors to penetrate the darkness and obscurity into which it has fallen, and brushing aside the webs and toils which encircle it, bring it back to light again. That you may be the better prepared to do this, it is important that you take the rules of evidence as established and sanctioned by the experience and wisdom of ages, and rely upon and be guided by them as is the mariner by his unerring compass.

Having explained to you what is meant by circumstantial evidence, I now call your attention to the rules by which I trust you will be guided in your deliberations. One of these rules is that from the facts proved, the theory contended for must naturally flow. In the application of this rule you will remember that "to warrant you in finding a verdict of guilty, you must find that the theory of the guilt of the prisoner flows naturally from the facts proved, and from all of the facts; and must be consistent with all such facts; and if you find any one of the establishtd facts to be inconsistent with the guilt of the prisoner, then it is your duty to acquit him, although all the other, facts may be consistent with and point to his guilt." That is, if you find that while numerous facts point to the guilt of the accused, and an other fact or facts are inconsistent with the theory

of guilt, then you could not convict; for, truth is always consistent with itself. To illustrate: Suppose that all the circumstances of a given case should point to a certain person as the murderer, except that the wound was evidently inflicted with the right hand; and it should appear that the right hand of the accused was paralyzed so as to render it powerless; here would be a fact inconsistent with the theory of guilt. Take another illustration: Ten men swear positively that they saw a certain person stab and instantly kill another; that the assassin was barefooted and immediately fled accross a recently harrowed field. where, on account of a recent rain, and the peculiar nature of the soil, every foot-print could be easily traced; that the tracks or impressions thus made were followed from the very spot where the homicide was perpetrated and in the precise direction taken by the accused, to the house in which he was shortly after arrested, while in the company of four or five associates. The foot-prints indicate that they were made by feet both perfect in form, with all the toe marks well defined. An examination of the accused developed the fact that he has no toes upon one foot, and the evidence shows that his foot has been thus deficient from the day of his birth. Here is a fact devoloped *inconsistent with the theory of the prisoner's guilt*—a fact which must overturn and defeat the effect of the positve testimony of ten men. It was a case of mistaken identity, or each and all of the ten men committed willful perjury. So, Gentlemen, you will perceive that one fact, inconsistent with the theory of guilt, is as conclusive as a dozen; and such a fact has the same effect in defeating the effect of positive testimony as circumstantial evidence. This being so, the position of learned counsel for the respondent is strictly corrrect, to-wit, that "in order to convict the prisoner, the jury must find that the facts proved are all consistent with the theory of guilt, and they must also find that they are inconsistent with the theory of his innocence, and if the facts in the case may be reconciled with innocence, and also with guilt, or in other words if there is a single hypothesis which will reconcile the facts, besides that of guilt, then the prisoner should be acquitted."

I have been requested, to advise you that, "The value or

effect of criminative facts and circumstances, depends not only upon their consistency with the guilt of the accused, but their inconsistency with the theory of his innocence, and no fact or circumstance should be considered as criminative or allowed to exert any influence against the respondent unless the jury can clearly see that such fact or circumstance is not only entirely consistent with the theory of guilt but also inconsistent with the theory of innocence."

"To render any fact or circumstance alleged by the Prosecution or attempted to be proven, of any value in establishing the guilt of the defendant, such fact or circumstance must not only be proven beyond all reasonable doubt, but it must be such a fact as is consistent with the guilt of the defendant and inconsistent with his innocence.

"To justify a conviction upon circumstantial evidence, each of the circumstances relied on by the Prosecution and material to a conviction must be proven and established with the same degree of certainty with which the guilt of the respondent is required to be established, and no fact or circumstance alleged by the Prosecution is to be considered at all by the jury, in determining the question of guilt or innocence, unless the truth of said fact or circumstance is fully established by credible evidence to the entire satisfaction of the jury, and beyond all reasonable doubt."

"In determining the question of guilt or innocence, the jury are bound to exclude entirely from their consideration every fact and circumstance alleged or sought to be proved by the Prosecution, which is not proven to a moral certainty and beyond all reasonable doubt."

It is, perhaps, proper that I should add to these propositions, a few suggestions. It is a well settled rule "that the circumstances from which the presumption of guilt is to be drawn, must themselves be fully established." That is, *each fact which is necessary to the conclusion of guilt,* must be distinctly proved, because they are the facts from which the main fact is to be inferred. Each of these essential facts and circumstances must be proved in the same manner and to the same extent, as if the whole issue rested upon the proof of each individual

essential circumstance. I think Judge Geddis, of the Richland Common Pleas Court, of Ohio, in the recent Robinson-Lunsford murder case, correctly stated that " the rule under consideration does not require that every circumstance which the State attempts to prove must be so established, because it may and often does happen in the trial of a case based on circumstantial evidence, that the proof attempted fails in some respects. Just so far as it does fail it must be rejected.

What you are to understand, therefore, is that only such facts as have been sufficiently proved shall be taken into consideration in arriving at a conclusion as to the guilt or innocence of the defendant. You should determine then what circumstances are proved and what are not proved, and exclude from your minds and consideration all such as are not satisfactorily established.

We may infer one fact from another; but sometimes the existence of one fact does, standing alone, appear consistent with two very different conclusions. For instance, the track of a horse, while it suggests the class of the animal, it may not indicate the color of that animal. It may be the track of the male or female. Hence while you would be warranted in saying it was the track of a horse, you would not be justified in concluding, from that fact alone, what was the color or sex of the animal.

If you find a fact, which, considered *in connection with all its surroundings*, is as equally consistent with innocence as with guilt — that is, if the light which you draw from it, taken in connection with all the facts upon which it has a bearing, contributes no more to sustain the theory of guilt than of innocence, then you may reject it.

I have been requested, on the part of counsel for the respondent to instruct you in relation to the proper effect and bearing of certain facts upon each other. One of these requests is as follows:

"If the jury should be satisfied by the evidence that during the afternoon or night of the 5th of September, Herbert Field was wilfully murdered, and that during the forenoon of that day, he went with the defendant alone into the bank building occupied by said Field and respondent. and that the respondent

has failed to prove that Field ever left the building alive, still the jury ought not, from such failure, to infer that Field did not leave such bank alive."

This, if properly understood, is correct. If Field was wilfully killed in the afternoon or night of the 5th of September, in the bank, the mere fact that he went into the bank with the defendant alone in the forenoon, added to the fact that the defendant has failed to prove that he ever came out alive, would not be sufficient to warrant the inference that he did not leave the bank alive; but it is, after all, for you to say whether, combining these with other and additional facts, you believe he ever left the bank alive after he returned there with the respondent from the shoe shop.

I have also been requested to advise you that,

"Although you believe from the evidence that Herbert Field was, on the afternoon or night of the 5th of September, 1869, murdered in the bank building at Manistee, occupied by Field and the respondent, and that the defendant was with said Field in the said bank alone from about eleven to twelve o'clock of said day, and the evidence fails to show that any other person entered the bank after the defendant left the same, the jury ought not to infer from the mere absence of proof of the fact, that no one else did enter said bank."

This is true, Gentlemen, but is only material to this issue upon the theory that Field was killed in the afternoon; and I leave it for you to say, from the testimony, what are your convictions in this regard. If he was killed in the afternoon, you will perceive the pertinency of the instruction. If he was not, you will perceive its irrelevancy.

I am also requested to advise you that, "Although the jury should be satisfied that Herbert Field did, on the 5th day of Sept., in company with the respondent alone enter the bank building at Manistee, occupied by said Field and respondent, at about eleven o'clock in the forenoon, and that respondent there remained alone with said Field until about twelve o'clock of that day, and then left the bank, and although the evidence fails to satisfy the jury that Field was ever afterwards seen alive, and although the jury

should be further satisfied by the evidence, that after the said Field and respondent entered said bank, and before the seventeenth of said month, Field was wilfully murdered, still such evidence merely showing that respondent had such opportunity to commit the murder, and absence of evidence showing that some other person had such opportunity, is not sufficient to justify the inference that respondent was the murderer. To justify such a conclusion, it is necessary to show further to a reasonable certainty that no other person except respondent had an opportunity to commit the murder."

This proposition is also correct if properly understood. It is not my purpose to misinterpret it, but if my interpretation of it should not be warranted from the language used, then such interpretation must be taken as a modification of the request. It is this: The mere fact that Vanderpool had the opportunity to murder Field is not sufficient to justify the conclusion that he did murder him, unless it appear that nobody else had the opportunity. But if you find that the respondent not only had the opportunity, but the motive, and if you find further and other facts naturally pointing to him as the guilty party, then, it would not be necessary to show that no other person had the *opportunity*, but in such case it would be incumbent to show, to a reasonable certainty that no other person did kill him. Thus far and no farther would the prosecution be bound to go.

You may, perhaps, ask why your investigations and deliberations are to be restricted by rules. They are not, except so far as is deemed necessary to enable you to discriminate between truth and error. These rules are by no means complicated. Thay are "the practical maxims of legal and philosophic sagacity and experience, matured and methodized by a succession of wise men, as the best means of discriminating truth from error and of contracting as far as possible the dangerous power of judicial discretion. They have their origin in man's nature as an intellectual and moral being ; and 'are founded in the charities of religion, in the philosophy of nature, in the rules of history and in the experience of common life.' " 20 *St. Tr.* 966; *Wills on Cir. Ev.* 245.

The relation of one fact to another; their coincidences and the inferences which we draw from them are matters of great interest

to the careful observer.   Some of these relations and coincidences are of a physicial and others of a moral nature; and to approximate to correct conclusions we must resort to both.   As to those circumstacnes denominated physical, we more readily draw our conclusions than from moral circumstances; and the conclusions from an investigation and contemplation of the former, are usually more satisfactory than the latter, because the feelings and passions which actuate men, are exhibited in such different degrees in different individuals.   One man, in the hour of severe trial, gives way to grief and becomes the creature of dispair; another, will, in the darkest hour of adversity, when the waves of affliction break over him, be joyous and hopeful.   And yet, the ordinary feelings and passions by which different individuals are actuated, are so similar, that observation and experience often enables us to gather, with a considerable degree of certainty, from the conduct, sayings and acts of a person, that which tends to carry conviction to our minds that such acts, conduct and sayings are induced by a consciousness of guilt.   We know that men are actuated by motives.   We know that there is some moving cause—some influence—that impels the mind to act.   We know that hatred, revenge, jealousy and cupidity, are some of the motives which prompt men to desperate acts; and when a person is accused of crime, it is natural to enquire after the motive by which he was, if guilty, actuated; and in determining who the perpetrator is, we associate evidences of motive with other circumstances and apply our knowledge of human nature to it.   But it is all important that in weighing evidences of motive, we should be sure that our judgment rather than our suspicions should control in forming our convictions.   So uncertain and unsatisfactory are our conclusions, derived from moral phenomena, that in matters of great importance, especially such as involve the life or liberty of the citizen, we should only give effect to such conclusions as are corroborated by other facts and circumstances.   Solomon's knowledge of the power of maternal love enabled him to judge righteously in determining to which of the two harlots the living child belonged, and that knowledge was an infallible criterion of truth.   *Bible*, 1 *Kings*, 3 *ch.* 16—28 *V.*   The nineteenth century, however, has no Solomons, and we should weigh well the presumptions afforded by

moral phenomena before we act upon them as morally certain, or as even sufficiently satisfactory to amount to a high degree of probability.

In the application of circumstantial evidence, the facts relied upon, whether established by moral or physical evidence, or both, must not only be consistent with guilt, and harmonize with that theory, but they must be such as to exclude, to a moral certainty, every reasonable hypothesis, but that of the defendant's guilt of the crime imputed to him. You must group together all the facts and circumstances of the case, and then, applying to them the legal tests, enquire whether, on the whole, they carry conviction to the mind that the respondent is guilty.

In investigating truth, through the instrumentality of circumstantial evidence, the process has been correctly styled "the process of shedding light upon darkness." The object which it is sought to bring to view, is enshrouded in darkness, and each fact relied upon to reveal it, is a light. There may be hundreds of these lights, no one of which would be sufficient to penetrate to the object; but the result is accomplished if the combined illumination reveals the hidden object.

Before referring to the amount of proof required to justify a verdict of guilty, I desire to call your attention to the weight to be given to the testimony.

It is impossible to lay down any precise rule to govern in all cases. Indeed, there is nothing arbitrary about it. You are to take into consideration the appearance of the witnesses on the stand, their apparent interest or anxiety in the result of the case, the probability and reasonableness of their statements and their means of knowledge. You are also to scrutinize closely to detect, if possible, whether the witness has a proneness to distort and color the facts—whether he entertains a decided opinion as to the main fact in controversy and whether or not his testimony is unduly guarded or restrained so as to disclose only such facts within his knowledge, as tend to support one side of the issue. The zeal and activity of a witness in collecting testimony for a party, as well as the contribution of funds to carry on the litigation, are considerations to be borne in mind in giving due weight to the testimony. In view

of all these considerations, you are to ask yourselves what convictions are produced by the testimony. In short, you are to resort to your experience as the result of your every-day associations with your fellow men, and then answer, each for himself, the question. " What do I believe from the testimony ?"

By the law of Michigan, the accused is permitted to make his statement, though not under the solemnity of an 'oath,' and the question of his credibility is left to the good sense and judgment of the jury.

His interest and the magnitude of that interest, the consistency of his statements, are to be considered by you and you must pass upon it according to the impression it makes upon your minds; or, to use the language embodied in the request of the learned counsel for the the respondent :

" The statement of the prisoner although not under oath, is for the consideration of the jury, and they may give it such credit, in whole or in part, as under all the circumstances they may think it entitled to ; and they may believe it in preference to unimpeached sworn testimony, if, under all the circumstances, and in view of all the evidence in the case, they believe it entitled to greater weight.

In this connection I call your attention to the statements and explanations of the respondent as to certain facts and occurrences, and advise you as requested, that " If the jury do not find from evidence other than the statement of Vanderpool, that he burned the carpet and clothes, they must consider the reasons and explanations which he gave for burning them ; and if those reasons and explanations have not been contradicted by evidence given by the prosecution, and are not improbable in themselves, they must consider those reasons and explanations to be true."

You are not to understand by the word " contradicted," as used in the request I have just submitted to you, that an absolute denial of the truth of his explanation and statement of reasons is required, but you may consider any well established fact which is inconsistent with the truth of his statement as a denial of the truth of such statement, explanations and reasons.

In reference to the character of the defendant in criminal cases, Lord Ellenborough held that in doubtful cases, evidence of the previous good character of the accused is highly important, and if it hangs in even balance, good character should make it preponderate in favor of the defendant. *Rex v. Davison*, 31 *St. Tr.* 217. Such is undoubtedly the law. "The reasonable operation of such evidence is to create a presumption that the party was not likely to have committed the act imputed to him; but which presumption, however weighty in a doubtful case, can but be irrelevant and unavailing against evidence which irrefragably establishes the fact." *Wills on Cir. Ev.* 131. Perhaps the language of Lord Ellenborough would not, even by implication extend the rule far enough. I think right reason would indicate the rule to be, that in all cases where evidence of the previous good character of the accused begets in the minds of the jury a reasonable doubt as to his guilt, they should acquit. I can see no reason or sense in making any distinction between the effect of reasonable doubts of guilt, whether induced by want of testimony or by the introduction of any evidence pertinent to the issue. The question is, "Do the jury entertain a reasonable doubt?" And it is immaterial whether that doubt has existed from the beginning of the trial, or whether it has been induced by any kind of evidence offered by the respondent, which the Court has permitted to go to the jury.

Much has been said during the argument, in relation to the kinds of evidence, and as to the effect which they should have upon the mind. You are not to overlook the fact that the consciousness that the law punishes offenders, induces persons who commit crime to avoid publicity; and the general rule is, that the greater the crime, the greater the secrecy with which it is perpetrated. In such cases positive evdience cannot be furnished. To require it, in order to secure a conviction, would be to throw wide open the doors to crime, and would work a dissolution of civil society. The learned Judge in the Robinson-Lunsford murder case already referred to, in referring to circumstantial evidence, correctly says: "Nor has experience shown that such evidence cannot be relied on, under proper

rules and restrictions, and when used with proper care, as leading to safe and satisfactory results.

"It is true that, absolute perfection does not belong to the works of man, in any of the departments of human life, and as a result we find each of these modes of proof, possessing disadvantages as well as advantages, and it is not easy or essential to compare their exact relative value. The *advantage* of positive evidence is that it is the direct, positive testimony of a witness to the fact to be proved, who, if he speaks the truth, saw it done, and the only question is whether he is entitled to belief. The *disadvantage* is that the witness may be false and corrupt, and the case may not afford the means of detecting and exposing the falsehood.

"In the case of circumstantial evidence, on the other hand, the witnesses testify not to the ultimate fact to be proved, but to a number of intermediate facts from which it may be inferred. The testimony of the witnesses, as applied to the intermediate facts is subject to the same causes of error, as if they were ultimate facts. And an aditional disadvantage attending this class of testimony is that a jury has not only to weigh the evidence of facts, but to draw just conclusions from them.

"But circumstantial evidence possesses certain advantages not to be overlooked In the actual occurrances of human life nothing is inconsistent. All the real circumstances in any event which actually transpires, must be consistent with each other, and harmonize perfectly. Everything that really does happen is consistent with all its parts. In a detailed account of a transaction where all the surrounding facts are made to appear minutely, and assume each a place in the narative, if there be any one or more which have been fabricated or misstated, the fact so falsely stated must stand alone—it cannot agree with the others, and make a consistent whole, because it is false—it never had an actual existence and is improperly there.

"Usually where the evidence is circumstantial, there are numerous witnesses testifying to a great variety of facts and circumstances, some of which may appear immaterial at first, and whose true relation to each other cannot be perceived until they are all grouped together. And thus the chances of a fraudulent com-

bination of witnesses to misrepresent the fact, is greatly diminished.

"Human ingenuity is not equal to the invention of a series of circumstances, each agreeing perfectly with the others, and all agreeing with all other known collateral circumstances. When, therefore, the circumstances proved are numerous, and testified to by different witnesses, and they together form a connected chain of circumstances, each and all concurring to establish the hypothesis of guilt, and to be accounted for on no other reasonable hypothesis, the mind may be led to inferences and conclusions as strong as those arising from positive testimony. And the danger of error does not arise so much from the employment of this kind of proof as from the want of correct understanding of its nature and uses."

The question as to how much proof is required to justify a verdict of guilty should, as next in order, be considered. And upon this point have been requested to say to you that "to justify a conviction of the respondent, it is not sufficient that there is a preponderence of evidence in favor of guilt, even although such preponderence should be so great as to create, in the opinion of the jury, a strong probability of guilt. The guilt of the respondent must be proved to a moral certainty, and to the exclusion of all reasonable doubt." 3 *Gr.* 29, *n.* 2.

"The guilt or innocence of the prisoner is not to be determined upon a mere preponderence of the proof. This is the rule in civil causes, but in this case the prisoner must be acquitted unless the evidence removes every reasonable doubt of his guilt from the minds of the jury; and in cases of doubt it is safer to acquit than convict."

In the application of these legal propositions you are to understand that what we mean by a preponderance of evidence in favor of either party, is, that the reasons for believing that what one party claims is true, are stronger, and more weighty than for believing otherwise. Thus, if you were trying a civil cause your virdict would be in accordance with the mere inclination of your convictions as produced by the evidence. Holding in your hands the scales of justice, if they perponderated one grain either way, that would indicate for which party your verdict should be given. If they perponderated neither way, but hung, evenly balanced,

your virdict would be for the defendant; for, nothing would be proved, and the plaintiff's case would remain where it was when he commenced.    The rule however, as already announced to you, is different in criminal cases.    You must, in order to convict the respondent, be satisfied of his guilt beyond a reasonable doubt.    And here again I am constrained to quote from the learned judge who delivered the instructions in the Robinson case:    "What then should be the state of mind of a juror to require or permit him to oppose a virdict of guilty on the ground of reasonable doubt ?    In the first place, it must not be because he thinks it *possible* merely that the defendant is not guilty.    The mind might in almost every criminal case feel that the case was subject to possibility of mistake.    Almost everything relating to human affairs and depending on moral evidence is open to possible doubts.    Hence the rule does not require absolute mathematical certainty.    "Nor would it be a reasonable doubt if it results from any consideration unconnected with the duty imposed by your oath—as if it should be produced by undue sensibility in view of the consequences of your virdict in a capital case.    A mere speculative doubt excited in the mind against the evidence, from any cause, as a pretext for acquittal is not a reasonable doubt.    The doubt should not be the result of trivial and fanciful suppositions or *remote conjectures as to possible states of fact,* differing from that established by the evidence.    Again it must not be a captious doubt, or one based on suspicion.

"*Reasonable certainty* is what the law requires, and it may be that degree of certainty upon which you would return to act in your own grave and important concerns.

"If at the close of your investigations, after exhausting every means within your reach to know the truth, when all the facts upon both sides have been faithfully examined—when you have fairly and honestly exercised the best powers of your mind to know the truth, without any desire to find a doubt, or exclude one, you still find your minds in a condition that you cannot say that you have an abiding conviction to a reasonable certainty of the truth of the charge, then you must acquit.

"But if after such diligent and mature deliberation, you find the evidence sufficient to convince your understanding and con-

science, to such a degree of certainty that you would be willing to act upon it in matters of the highest importance to yourselves, then you should not hesitate. Thus you see it must be a real, well grounded doubt, fairly and reasonably entertained after proper effort is made to know the truth."

Now, Gentlemen, I have endeavored to discharge my duty faithfully to the People, faithfully to the respondent. I have stated to you the rules of law applicable to this case as I understand them. You are to take these rules as guides in your deliberations. Apply them properly to the facts in the case. If you do this you will have discharged your duty faithfully, and I trust satisfactorily.

If you should find the respondent guilty, the law requires you to specify in your verdict the degree of the respondent's guilt. I understand counsel to agree that if guilty at all, your verdict should be, "guilty of murder in the first degree." Now Gentlemen, remembering and guided by the results of your experience in your intercourse with your fellow men, and your knowledge of human nature, you will review the testimony in this case, without fear or favor. You will not forget that while you hold in your hands the liberty of this man, who, in the morning of life is called upon answer for the alleged crime of murder, you also, for the time being, have confided to you the interests of the people; and under the solemnity of your oaths, you are to say whether George Vanderpool is guilty. The law is no respecter of persons; and when a crime has been committed, the well being of society and the safety of the people demand that the officer of the law pursue the offender, and, whether he be found in the palace, reveling in the lap of luxury, or, in the lowly cottage, basking in the sunlight of a happy home, enjoying the society of loved ones, in the immediate presence of an affectionate, constant wife—I say that the people demand that their officer bring the offender to the temple of justice to receive his just reward. You are to determine the truth in the premises, and there your duty ceases. You are not to look to consequences. Take this case, Gentlemen, discharge your duty to the prisoner and to the public; and render such a verdict as shall satisfy your consciences, such

as will satisfy you now, and as will enable you in the great day when we must all appear before the Judge, from whose decree there is no appeal, to say with truth, " I discharged my duty to myself, to the people of the Commonwealth, and to George Vanderpool.